**Application of COMMERCIAL CARRIER CORPORATION.**

Railroad & Public Utilities Commission.

November 1, 1956.

William P. Tomasello, Bartow, for the applicant.

Thomas J. Shave, Jr., Fernandina Beach and Dan R. Schwartz, Kitchen & Schwartz, Jacksonville, for Burgess and Cook, Inc., protestant.

Chairman WILBUR C. KING, commissioners JERRY W. CARTER and ALAN S. BOYD participated in the disposition of this cause.

BY THE COMMISSION.

The commission by its designated examiner, J. J. Daniel, held a public hearing on this application pursuant to notice on August 6, 1956 at 2255 Oak St., Jacksonville.

After the hearing the examiner filed with the commission his report and recommendations in the form of a proposed order. The proposed order was served on all parties of record who were allowed 15 days within which to file exceptions. Exceptions were filed by the protestant and the commission heard oral argument. After due consideration of the testimony and evidence adduced in this cause, the examiner's proposed order, the exceptions filed thereto and the oral argument, the commission, by a majority vote, adopts the proposed order as its order.

The applicant seeks authority for an extension of its certificate # 480 so as to authorize the transportation in common carriage of corrugated pulpboard or fiberboard boxes and corrugated pulpboard or fiberboard sheets from Duval and Nassau counties to all points in the state south of a line made by U. S. highway 90 from Jacksonville to Lake City, state highway 247 from Lake City to Branford, state highway 129 from Branford to Old Town, and state highway 349 from Old Town to Suwannee, with closed doors as to any municipality, town or community located on said highways. Certificate # 480 authorizes applicant to haul cement, lime, aggregates, lumber and all types of feeds. Applicant transports feeds from south and central Florida to northeast Florida and

the purpose of seeking this authority is to enable it to have its trucks loaded on the return trips. The applicant has the necessary equipment to transport the items sought herein in the event this application is granted. It is also financially able to conduct the proposed operation.

Within Duval and Nassau counties there are located three large shippers engaged in the business of producing the items sought to be transported by this application. The corrugated pulpboard or fiberboard boxes and corrugated pulpboard or fiberboard sheets are used by citrus and vegetable concerns situated in south and central Florida. Applicant proposes an overnight service from Duval and Nassau counties to points and places in central and southern Florida.

The protestant is a motor common carrier with authority to operate between Jacksonville and Fernandina Beach, Florida, over highways 200, 17 and 105. It has been doing business with one of the shippers, who testified herein, by means of connecting with a common carrier in Jacksonville who transports the items to central and southern Florida. In other words, the protestant has been furnishing a connecting carrier haul in contrast to a single direct haul which the applicant proposes to operate if this application is granted.

The general manager of National Container Corporation, located in Jacksonville, testified that it ships boxes to fruit and vegetable packing houses in south and central Florida. This witness testified that the presently authorized truck and rail transportation service is unsatisfactory resulting in its having to operate its own trucks for transportation which it prefers not to do. The rail service is unsatisfactory because of the delay involved in the required interchange. The truck service is unsatisfactory because it has not been available when needed. This shipper is presently transporting eight to nine hundred tons per month to customers in the state in its own trucks.

A witness for Grower Container Corporation also located in Jacksonville, testified that this company will be in business about September 15, 1956. It will manufacture corrugated boxes and sheets and needs rapid transportation and overnight service to its anticipated customers in central and southern Florida. This witness testified that this company does not desire to operate its own trucks and that in his opinion it was impractical to serve their customers by rail shipments. He testified that his company desires the service proposed to be rendered by the applicant and stated that it would be a convenience to their proposed operation.

The application was also supported by the testimony of the assistant traffic manager of the Container Corporation of America which has plants in Fernandina Beach, Florida. This corporation manufactures and distributes corrugated boxes and sheets. From January 4 to June 30, 1956 it shipped by rail in this state 1,840,848 pounds, but this method of transportation was not satisfactory in many cases because of the two-line haul to certain points of destination. Sometimes these shipments took as long as 48 hours when truck transportation could complete the job within six hours.

This witness also testified that Container Corporation of America leased its own vehicles against its wishes and for a period beginning January 2 and ending June 30, 1956 it shipped in its own vehicles 1,424,131 pounds within the state of Florida. He further testified that for a period from January 3 to June 7, 1956, it had used the services of the protestant and its connecting carriers to ship within the state 297,869 pounds. He was of the opinion that the service of the protestant was not entirely satisfactory because a direct line service is needed to satisfy customer needs and to stay competitive in the box business in this state. It was also pointed out by this witness that in the event this application was granted the products heretofore transported in its own trucks namely: 1,424,131 pounds, would be available to the applicant.

No representative of the rail carriers nor of the connecting common carriers appeared in protest to this application.

It is self evident from the testimony adduced herein that the existing facilities available to the shippers are completely inadequate. This inadequacy insofar as rail transportation is concerned stems from the fact that the rail transportation involves an unreasonable delay in a two-line haul. This inadequacy insofar as the protestant's services are concerned stems from a dissatisfaction of a connecting carrier haul and a lack of equipment when needed. The conclusion is inescapable that the proposed service to be rendered by the applicant is a service that is needed by shippers in Duval and Nassau counties and that the applicant's overnight direct line service to central and southern Florida can meet the demands of these shippers.

Based on the entire record herein the commission finds that public convenience and necessity require the granting of this application. The commission further finds that the present transportation services are inadequate and that the granting of this application will have no adverse effect upon the existing transportation facilities. The commission further finds that the ap-

plicant is financially able to conduct this operation and has the equipment necessary therefor.

It is therefore ordered that the application of Commercial Carrier Corporation for an extension of its certificate # 480 so as to authorize the transportation in common carriage of corrugated pulpboard or fiberboard boxes and corrugated pulpboard or fiberboard sheets from Duval and Nassau counties to all points and places in the state of Florida south of a line made by U. S. highway 90 from Jacksonville to Lake City, state highway 247 from Lake City to Branford, highway 129 from Branford to Old Town, and state highway 239 from Old Town to Suwannee, with closed doors as to any municipality, town or community on said highways, is hereby granted.

It is further ordered that the applicant file with the commission evidence of compliance with the commission's rules and regulations governing insurance and tariffs and make proper reports to the state comptroller relative to mileage taxes.

Commissioner ALAN S. BOYD (dissenting).

The application, which brought about this proceeding, was filed with the commission on May 12, 1956. Some time prior thereto Burgess and Cook, Inc., a corporation, and McJunkin Freight, Inc., a corporation, had filed a joint petition with the commission for the transfer of the certificate of McJunkin Freight, Inc. (certificate # 388) to Burgess and Cook, Inc. On May 29, 1956 the commission by its order # 3522, docket #4708, authorized and approved the application for transfer, and on June 1, 1956 Burgess and Cook, Inc. took over the operation of certificate # 388—which provides for regular route scheduled common carrier service of general commodities between Jacksonville and Fernandina Beach.

Commercial Carrier Corporation, which holds and operates under certificate of public convenience and necessity # 480, seeks by this application an extension of this certificate to authorize the transportation of corrugated pulpboard or fiberboard boxes and corrugated pulpboard or fiberboard sheets from Duval and Nassau counties to an area comprising most of the central and south portions of the state. The testimony shows that if the authority sought is granted by the commission the applicant will receive business from two plants in Jacksonville and one plant at Fernandina Beach, the Container Corporation of America Plant there situated.

At the present time the Container Corporation of America plant at Fernandina Beach is served by the protestant, Burgess and Cook, Inc., by Seaboard Air Line Railway and by its own trucks. According to the testimony of the witness representing Container Corporation of America, none of its present transportation services is satisfactory. The primary criticism this witness had of the service furnished by Burgess and Cook was the necessity for the carrier to interline its cargo with one of the regular route scheduled common carriers serving south and central Florida at the latter's terminals in Jacksonville. The Container Corporation plant at Fernandina Beach is the biggest single shipper over the routes of Burgess and Cook, Inc.—at the present time accounting for approximately 20% of the total monthly revenue of Burgess and Cook, Inc.

The testimony in this proceeding reflects that Burgess and Cook, Inc. has added equipment to its operation since taking over the old McJunkin Freight Line certificate. The protestant has further stated its willingness to provide additional equipment as necessary to render service to Container Corporation of America and other shippers.

An application for the extension of a certificate of public convenience and necessity imposes upon the applicant the same burden of proof as is required of the applicant upon application for an original certificate of public convenience and necessity. Section 323.03, Florida Statutes 1955, provides for the filing and disposition of applications for certificates of public convenience and necessity, where as here the application sought covers territory already served by the protestant. The applicable section, subsection 3, provides as follows—

"* * * provided, that the commission in granting any such certificate shall take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by said applicant, and also the effect upon transportation as a whole within said territory. * * *

"When application is made by an auto transportation company for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission."

The Supreme Court interpreted the last paragraph of subsection 3 of section 323.03 in the recent case of Alterman Transport Line,

et al v. Carter, 88 So. 2d 594, on rehearing wherein it was stated—"A new certificate can be granted by the commission on proof of public convenience and necessity therefor, if the existing certificate holder has had an opportunity to provide the service and has failed to do so, and the service is within the jurisdiction of the commission reasonably to be required." This interpretation of the statute offers some protection to existing franchise holders, but at the same time permits the commission to be guided in all cases by its polar star—the public convenience and necessity. "When a new certificate is applied for, the certificated carrier has the burden of explaining why it has not met the need for the new service, if any such need there is, and in the ordinary case, the failure of existing carriers to meet reasonable requirements mentioned in the last sentence of section 323.03 (3) should be considered as of the time of application for the new permit, and not at some future date."

It is conceded that the protestant has provided to Container Corporation of America not only regularly scheduled transportation service between Fernandina Beach and Jacksonville, but has, in addition, furnished an "On Call" service, both of which services have provided for delivery by the protestant to the interline carriers at Jacksonville on the same day as pickup at the Container Corporation Plant. The complaint of Container Corporation goes to the requirement of interlining its shipments at Jacksonville, which it says, places it in a poor competitive position due to alleged delays in delivery of its products to the purchasers. This complaint is essentially one against a system of regulation which provides for more than one common carrier operating through interchange within a state, the merits of which need not be discussed for a decision in this matter.

It is undoubtedly true that a one-carrier-service would be more convenient for the Container Corporation of America. It is just as true that the convenience of one shipper, albeit a large one for the territory involved, does not constitute public convenience and necessity for the purpose of authorizing competing transportation where one common carrier is presently in existence. This is particularly so where the existing common carrier is doing everything within its power to furnish the service needed and desired by the shipper.

Logic does not permit this commission, on the one hand, to authorize the transfer of an ailing operation to new owners who infuse the operation with new blood and new capital; and on the other hand, to grant an authority to a competing carrier which

would take away the most profitable business the existing carrier handles.

The testimony of the applicant's witnesses for the handling of materials from the two plants in Duval County was no stronger than that of the applicant for the Container Corporation at Fernandina Beach. The existing carriers operating out of Jacksonville did not see fit, however, to protest the application. The statutory admonition that, "the commission in granting any such certificate shall take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by the applicant" was not intended to mean that the commission should fight the battles of existing carriers who are not sufficiently interested to appear in protection of their own interests. The application should, therefore, be granted as to Duval County and denied as to Nassau County.